UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

ARMANDO GONZALEZ,

Plaintiff,

vs. 9:07-CV-53 (DNH/GJD)

SGT. WHITTAKER; C.O. BUNNY,

Defendants.

---

ARMANDO GONZALEZ
Plaintiff pro se
HEATHER R. RUBINSTEIN, Asst. Attorney General
Attorney for Defendants

GUSTAVE J. DI BIANCO, United States Magistrate Judge

**REPORT-RECOMMENDATION**

This matter has been referred to me for Report and Recommendation by the Honorable David N. Hurd, United States District Judge, pursuant to 28 U.S.C. § 636 (b) and Local Rules N.D.N.Y. 72.3(c).

In this civil rights complaint, plaintiff alleges that he was subjected to excessive force by the two defendants. Compl. ¶ 6 (Dkt. No. 1). Plaintiff does not seek any specific relief.[1] Presently before the court is defendants' motion for summary judgment pursuant to FED. R. CIV. P. 56. (Dkt. No. 20). Plaintiff has not responded to the motion. For the following reasons, this court agrees with defendants and will recommend dismissal of the complaint.

---

[1] The relief section of plaintiff's form-complaint is blank.

# DISCUSSION

## 1. Summary Judgment

Summary judgment may be granted when the moving party carries its burden of showing the absence of a genuine issue of material fact. FED. R. CIV. P. 56; *Thompson v. Gjivoje*, 896 F.2d 716, 720 (2d Cir. 1990) (citations omitted). "Ambiguities or inferences to be drawn from the facts must be viewed in the light most favorable to the party opposing the summary judgment motion." *Id*. However, when the moving party has met its burden, the nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986); *see also Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986).

At that point, the nonmoving party must move forward with specific facts showing that there is a genuine issue for trial. *Id*. *See also Burt Rigid Box v. Travelers Prop. Cas. Corp.*, 302 F.3d 83, 91 (2d Cir. 2002)(citations omitted). However, only disputes over facts that might affect the outcome of the suit under governing law will properly preclude summary judgment. *Salahuddin v. Coughlin*, 674 F. Supp. 1048, 1052 (S.D.N.Y. 1987)(citation omitted).

## 2. Facts

In a very sparse complaint, plaintiff alleges that on September 5, 2006, he was "doing P.T." at Summit Shock Incarceration Correctional Facility. Compl. ¶ 6. Plaintiff states that while he was running with a group of individuals, he fell down. *Id.* Plaintiff claims that after he fell, defendants Whittaker and Bunny took plaintiff

behind the trees and beat him. Plaintiff states that he had only asked for help because he was sick. He states that he was then "dragged" to the infirmary and later taken to the hospital after a staff member called 911. Plaintiff claims that he was "in extremis" and was sent to the hospital because of the way that defendants Whittaker and Bunny "dragged" plaintiff to the infirmary. *Id.*

The complaint contains three causes of action. The first states that he was beaten by two corrections officers after plaintiff asked for help. Compl. ¶ 7. The second cause of action states that defendants "dragged" plaintiff to the infirmary, and the third cause of action states that "[t]hey did not give me the proper treatment. *Id.* It is unclear what plaintiff means by his third cause of action, however, since he names only defendants Whittaker and Bunny, the court assumes that he is referring to these defendants and is not alleging that anyone in the infirmary failed to give plaintiff proper treatment.

**3. <u>Exhaustion of Administrative Remedies</u>**

The Prison Litigation Reform Act, (PLRA), 42 U.S.C. §1997e(a), requires an inmate to exhaust all available administrative remedies prior to bringing a federal action. This requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes and regardless of the subject matter of the claim. *See e.g. Giano v. Goord*, 380 F.3d 670, 675-76 (2d Cir. 2004). Inmates must exhaust their administrative remedies even if they are seeking only money damages that are not available in prison administrative proceedings. *Id.* at 675. The failure to exhaust is an affirmative defense that must be raised by the defendants.

*Scott v. Del Signore*, 2005 U.S. Dist. LEXIS 6070, *12-15 (W.D.N.Y. Feb. 18, 2005) (citing *inter alia Johnson v. Testman*, 380 F.3d 691, 695 (2d Cir. 2004)). As an affirmative defense, it is the defendants' burden to establish that plaintiff failed to meet the exhaustion requirements. *Id.* at *12-13 (citing *Giano,* 380 F.3d at 675).

In *Jones v. Bock*, 549 U.S. 199, 127 S. Ct. 910, 922-23 (2007), the Supreme Court held that in order to properly exhaust an inmate's administrative remedies, he must complete the administrative review process in accordance with the applicable state rules. *Id.* (citing *Woodford v. Ngo*, 548 U.S. 81 (2006)). In *Woodford*, the Court held that "proper" exhaustion means that the inmate must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a prerequisite to bringing suit in federal court. 548 U.S. at 90-103. In *Woodford*, the Court concluded that the inmates did not properly exhaust their administrative remedies when their grievances were dismissed because the inmates had missed the deadlines set forth in the grievance procedure. *Id.* at 93.

The grievance procedure in New York is a three-tiered process.[2] The inmate must first file a grievance with the Inmate Grievance Resolution Committee (IGRC). N.Y. COMP. CODES R. & REGS., tit. 7 §§ 701.5(a)(1) and (b). At the time that plaintiff's incident arose, an inmate had fourteen (14) days within which to file a

[2] The court notes that shock incarceration facilities are governed by some modified procedures. *See* N.Y. COMP. CODES R. & REGS., tit. 7 S§ 701.1(d), 702.1 *et seq.* However, the differences are not relevant in this action, and it appears that plaintiff was transferred to Mid-State Correctional Facility upon his discharge from the hospital, where the regular grievance procedure was used. Def. Statement of Material Facts ¶ 4.

complaint.[3] An adverse decision of the IGRC may be appealed to the Superintendent of the Facility. *Id*. § 701.5(c). Adverse decisions at the Superintendent's level may be appealed to the Central Office Review Committee (CORC). *Id*. § 701.5(d). The court also notes that the regulations governing the Inmate Grievance Program encourage the inmate to "resolve his/her complaints through the guidance and counseling unit, the program area directly affected, or other existing channels (informal or formal) prior to submitting a grievance." *Id.* § 701.3(a)(Inmate's Responsibility).

Although defendants argue that after *Woodford*, no exceptions to the exhaustion rule exist, the courts in the Second Circuit have not interpreted *Woodford* so strictly. Even after *Woodford*, courts have continued to hold that some exceptions apply to the exhaustion requirement, particularly where defendants' conduct is such that they will be estopped from asserting the defense. *See Smart v. Goord*, 04 Civ. 8850, 2008 U.S. Dist. LEXIS 16053, *5-7 (S.D.N.Y. March 3, 2008)(citing *Ziemba v. Wezner*, 366 F.3d 161, 162 (2d Cir. 2004)(plaintiff claimed, *inter alia*, that prison officials beat him, threatened him, and denied him grievance forms)); *Amador v. Superintendents of the Dep't of Correctional Svcs.*, 03 Civ. 650, 2007 U.S. Dist. LEXIS 89648, *14-24 (S.D.N.Y. Dec. 4, 2007)(discussing viability of exceptions to exhaustion after

[3] The court would first point out that the regulations were re-numbered in 2006. The court will cite to the new regulation numbers. The original regulation number for the time to file grievances was section 701.7(a)(1), and provided a fourteen day time limit. *See Tackman v. Goord*, 2005 U.S. Dist. LEXIS 42654, *51 (W.D.N.Y. Sept. 26, 2005)(citing regulations). The regulations have been amended to allow inmates twenty-one (21) calender days from an alleged occurrence within which to file a grievance, and the deadline appears in section 701.5. N.Y. CIV. PRAC. L. & R., tit.7, § 701.5(a)(1). *See also Winston v. Dodge*, 07 Civ. 1805, 2008 U.S. Dist. LEXIS 60966, *8-9 n.2 (S.D.N.Y. Aug. 5, 2008)(citing new regulations with the 21 day limit).

*Woodford v. Ngo*).

At the same time that the Second Circuit decided *Giano*, it also decided four other related cases, clarifying the law in the Second Circuit regarding the PLRA's exhaustion requirement and specifying various instances in which the requirement could be waived or excused. *See Hemphill v. State of New York*, 380 F.3d 680 (2d Cir. 2004)(remanding case to determine if defendant's alleged threats constituted "special circumstances" justified plaintiff's failure to exhaust); *Abney v. McGinnis*, 380 F.3d 663 (2d Cir. 2004)(whether failure to exhaust may be justified because plaintiff obtained favorable rulings on his grievances, but the relief that he was supposed to obtain was never forthcoming); *Johnson v. Testman*, 380 F.3d 691 (2d Cir. 2004) (whether including claims in a disciplinary appeal may suffice for the exhaustion requirement); *Ortiz v. McBride*, 380 F.3d 649 (2d Cir. 2004)(complete dismissal is not required when plaintiff brings both exhausted and unexhausted civil rights claims).

Pursuant to these cases, the Second Circuit developed a "three part inquiry" to determine whether an inmate fulfilled the PLRA exhaustion requirement. *See Brownell v. Krom*, 446 F.3d 305, 311-12 (2d Cir. 2006)(citing *Hemphill*, 380 F.3d at 686). The inquiry asks (1) whether the administrative remedies were available to the inmate; (2) whether defendants' own actions inhibiting exhaustion estops them from raising the defense; and (3) whether special circumstances justify the inmate's failure to comply with the exhaustion requirement. *Id.*

Without making specific rulings, or by ruling in the alternative, courts have continued to assume that there are exceptions to the exhaustion requirement. In

*Macias v. Zenk*, 495 F.3d 37 (2d Cir. 2007), the Second Circuit cited *Woodford*, and also considered whether the defendants' actions would have estopped them from asserting the defense of non-exhaustion. In *Amador*, the district court cited *Woodford*, recognizing that the "viability" of the Second Circuit's three-part inquiry might have been called into question, but continued to use the *Brownell/Hemphill* factors to determine whether the exhaustion requirement could be waived. Very recently, the Second Circuit has utilized this three-part test to determine whether a plaintiff properly exhausted his remedies. *Davis v. State of New York*, 07-3262, 2009 U.S. App. LEXIS 3439, *2-3 (2d Cir. Feb. 20, 2009).

This court also notes that based upon the concurring opinion in *Woodford*, it appears that the Second Circuit decisions have ***not*** been overruled in that respect. In his concurring opinion in *Woodford*, Justice Breyer specifically noted that two circuits, the ***Second*** Circuit and the Third Circuit that have interpreted the PLRA "in a manner similar to that which the [Supreme] Court today adopts [in *Woodford*] have concluded that the PLRA's proper exhaustion requirement is not absolute." *Woodford*, 126 S. Ct. at 2393 (citing *Spruill v. Gillis*, 372 F.3d 218, 232 (3d Cir. 2004); *Giano v. Goord*, 380 F.3d 670, 677 (2d Cir. 2004))(Breyer, J. concurring).

Justice Breyer then stated that on remand, the lower court should "similarly" consider any claims that the inmate might have concerning whether his case "falls into a ***traditional exception that the statute implicitly incorporates***." *Id.* (emphasis added). This statement implies that there are still exceptions that a court may consider. Thus, this court will proceed to consider whether plaintiff asserts any of the "traditional"

exceptions to the exhaustion requirement.

In this case, defendants argue that plaintiff has failed to exhaust his administrative remedies with respect to his claims. In the complaint, plaintiff ***admits*** that he did not file a grievance regarding the facts alleged in his complaint. Compl. ¶ 4(b). Defendants have also submitted the affidavit of Karen Bellamy, Director of the Inmate Grievance Program, who states that a review of the Department of Correctional Services records shows that plaintiff did not file any grievance regarding this incident. Bellamy Aff. ¶ 4 & Ex. A. Plaintiff states that the reason that he did not complain, either by grievance or informally to prison authorities was "because [he] was in the hospital at the time." Compl. ¶ 4(c).[4]

Plaintiff's reason for not filing a grievance cannot succeed in overcoming the exhaustion requirement in this case. The first factor in the Second Circuit test asks whether the administrative remedies were "available." *Brownell,* 446 F.3d at 311. According to plaintiff, the incident in this case occurred on September 5, 2006. Compl. ¶ 6. Defendants have submitted plaintiff's "Admission and Discharge Summary," showing that plaintiff was discharged from "SUNY Syracuse" on September 13, 2006, after he was examined for "dyspnea on minor exertion." Defs. Ex. A.[5] Plaintiff was "discharged" from the hospital only eight days after the incident.

---

[4] Unfortunately, plaintiff answered the incorrect sections of paragraph 4, but it is clear from his answers that he did not file a grievance and did not "complain" to prison authorities because plaintiff was in the hospital "at the time."

[5] Oddly, the discharge summary is written in the space reserved for the "Admission Note," and the September 13, 2006 date is written in the space reserved for the "Date/Time of Admission." Defs. Ex. A. However, the first word in the note is "Discharged." *Id.*

Even assuming that plaintiff only had fourteen days to file a grievance, assuming that he was in the hospital the entire eight days, and assuming that being in the hospital would render the grievance procedure "unavailable," he still had plenty of time to file after his discharge from the hospital. In fact, the grievance procedure specifically provides that an inmate may request an extension to file a grievance or appeal. N.Y. COMP. CODES R. & REGS., tit. 7 § 701.6 (g)(1). Thus, the grievance procedure was "available."

With respect to the second factor stated by the Second Circuit in *Brownell*, plaintiff has not alleged that defendants somehow prevented him from filing a grievance. The court notes that upon his discharge from the hospital, he was transferred to Mid-State Correctional Facility, and was not even in the facility where defendants were located. Plaintiff would have been able to file his grievance at the new facility, even though it related to his previous place of incarceration. *See id*. ¶ 701.5(a)(1)(providing that an inmate must file his grievance at the facility where the inmate is housed, "even if it pertains to another facility"). Thus, defendants could not have prevented plaintiff from filing a grievance and are not estopped from raising the exhaustion defense. Finally, plaintiff has alleged no other special circumstances that would excuse him from filing a grievance, and therefore, this court must recommend dismissal for failure to exhaust.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that defendants' motion for summary judgment (Dkt. No.

20) be **GRANTED**, and the complaint **DISMISSED IN ITS ENTIRETY.**

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have ten days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993)(citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: February 25, 2009

G J DiBianco

Hon. Gustave J. DiBianco
U.S. Magistrate Judge